KAB

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Rich,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>State of Arizona, et al.,<br><br>　　　　　　Defendants. | No.   CV-20-00573-PHX-DJH (ESW)<br><br>**ORDER** |

Plaintiff Paul Rich, who is represented by counsel, brought this action pursuant to 42 U.S.C. § 1983 and Arizona state law.  (Doc. 1-1.)  Pending before the Court are: (1) the Magistrate Judge's Report and Recommendation (Doc. 18) and (2) Defendants Rode and Torres's Motion for Summary Judgment based on failure to exhaust available administrative remedies.  (Doc. 16.)

**I.   Background**

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated the following claims: (1) Eighth Amendment failure to protect in Count One and state law negligence and/or gross negligence in Count Three against Rode, (2) state law negligence and/or gross negligence against Wait and Pomeroy in Count Three, (3) state law assault and battery against Valasquez in Count Five, (4) Eighth Amendment excessive force in Count One and state law assault and battery in Count Five against Defendant Torres, and (5) state law negligent hiring, training, and supervision in Count Four against Defendants Ryan and the State of Arizona.  (Doc. 5.)  The Court dismissed the remaining claims and

1  Defendants. (*Id.*)

## II. The Report and Recommendation

The Magistrate Judge recommends that the Court grant the Parties' Joint Motion to Substitute the State of Arizona for Defendants Pomeroy-Huff, Rode, Ryan, Wait, Torres, and Valasquez as to Counts Three, Four, and Five of the First Amended Complaint and dismiss the individual Defendants as to those counts because, pursuant to Arizona Revised Statutes section 31-201.01(F), the State is the proper Defendant to those Counts. (Doc. 18.) There are no objections to the Report and Recommendation.

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *accord Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) ("Following *Reyna–Tapia*, this Court concludes that *de novo* review of factual and legal issues is required if objections are made, 'but not otherwise.'"); *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1032 (9th Cir. 2009) (the district court "must review de novo the portions of the [magistrate judge's] recommendations to which the parties object."). District courts are not required to conduct "any review at all . . . *of any issue* that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985) (emphasis added); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the [R & R] to which objection is made.").

The Report and Recommendation will be adopted and the State of Arizona will be substituted for Defendants Pomeroy-Huff, Rode, Ryan, Wait, Torres, and Valasquez as to Counts Three, Four, and Five of the First Amended Complaint and the Court will dismiss the individual Defendants as to those counts.

. . . .

. . . .

### III. Motion for Summary Judgment

Defendants Rode and Torres argue that they are entitled to summary judgment as to the Eighth Amendment claims against them because Plaintiff did not exhaust his available administrative remedies as to those claims.

#### A. Summary Judgment Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw

all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### B. Exhaustion Legal Standard

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170-71. But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

### C. Facts

Plaintiff was housed at the Arizona State Prison Complex–Lewis, Rast Unit (Rast Unit) from March 9, 2017 to March 7, 2018; from March 8, 2018 to March 9, 2018; from March 12, 2018 to March 15, 2018; from March 16, 2018 to December 23, 2018; from June 5, 2019 to June 14, 2019; and from June 21, 2019 to the present date. (Doc. 17 ¶ 9; Doc. 28 ¶ 9.) Plaintiff was housed at the Arizona State Prison Complex–Lewis, Bachman Unit (Bachman Unit) from March 7, 2018 to March 8, 2018; from March 9, 2018 to March 12, 2018; from March 15, 2018 to March 16, 2018; and from January 23, 2019 to April 16, 2019. (Doc. 17 ¶ 10; Doc. 28 ¶ 10.) Plaintiff was housed at the Arizona State Prison Complex–Lewis, Stiner Unit (Stiner Unit) from December 23, 2018 to December 24, 2018. (Doc. 17 ¶ 11; Doc. 28 ¶ 11.) Plaintiff was housed at the Arizona State Prison Complex–Lewis, Buckley Unit (Buckley Unit) from January 22, 2019 January 23, 2019; and from April 16, 2019 to June 4, 2019. (Doc. 17 ¶ 12; Doc. 28 ¶ 12.) Finally, Plaintiff was housed at the Arizona State Prison Complex–Lewis, Morey Unit (Morey Unit) from June 14, 2019 to June 21, 2019. (Doc. 17 ¶ 13; Doc. 28 ¶ 13.)

ADC Department Order (DO) 802, Inmate Grievance Procedure, with an effective date of October 16, 2016, governs ADC's inmate administrative grievance procedure and is the version that was in effect from March 9, 2017 through February 13, 2020, which was the period of time that Plaintiff was housed at the Rast, Bachman, Stiner, Buckley, and Morey Units until filing his FAC. (Doc. 17 ¶ 14; Doc. 28 ¶ 14.)

DO 802 sets forth the procedures that inmates must follow to complete the prison administrative grievance process through the Director's level, which is the final step of the administrative grievance process, for both medical and non-medical grievances. (Doc. 17 ¶ 15; Doc. 28 ¶ 15.) DO 802 provides that inmates may use the administrative grievance process for issues related to any aspect of institutional life or condition of confinement that directly and personally affects the inmate grievant, including written instructions (i.e., Department Orders, Director's Instructions, Post Orders, and Technical Manuals), procedures, and actions of staff. (Doc. 17 ¶ 16; Doc. 28 ¶ 16.)

The DO 802 Inmate Grievance Procedure does not serve as a duplicate appeal process or substitute appeal process for certain issues that have an independent appeal process. (Doc. 17 ¶ 17; Doc. 28 ¶ 17.) Plaintiff's Eighth Amendment excessive force and failure-to-protect claims against Defendants Torres and Rode do not have an independent appeal process. (Doc. 17 ¶ 18; Doc. 28 ¶ 18.)

A written copy of the Inmate Grievance Procedure is available to inmates at each prison unit's Inmate Resource Library. (Doc. 17 ¶ 19; Doc. 28 ¶ 19.) Inmates receive a written and oral explanation of the Inmate Grievance Procedure during intake and as part of the orientation process when they transfer to a new facility. (Doc. 17 ¶ 20; Doc. 28 ¶ 20.) Inmates may utilize the Inmate Grievance Procedure regardless of their disciplinary status, housing location, or classification. (Doc. 17 ¶ 21; Doc. 28 ¶ 21.)

The Inmate Grievance Procedure for standard grievances is a four-step review process for inmates to seek resolution of issues they encounter while incarcerated. (Doc. 17 ¶ 22; Doc. 28 ¶ 22.) The first step of the Inmate Grievance Procedure requires an inmate to attempt to resolve the complaint through informal means by discussing the issue with staff in the area most responsible for the complaint. (Doc. 17 ¶ 23; Doc. 28 ¶ 23.) If the inmate is unable to resolve the complaint through informal means, the second step of the Inmate Grievance Procedure is for the inmate to submit an Informal Complaint on an Inmate Informal Complaint Resolution Form to the Correctional Officer ("CO") III. (Doc. 17 ¶ 24; Doc. 28 ¶ 24.) The CO III will informally investigate and attempt to resolve the issue raised by the inmate in the Informal Complaint Resolution Form and provide the inmate with a written response. (Doc. 17 ¶ 25; Doc. 28 ¶ 25.)

If the inmate is dissatisfied with Inmate Informal Complaint Response or if the time frames for the CO III to provide a response have been exceeded, the third step of the Inmate Grievance Procedure is for the inmate to file a Formal Grievance with the Grievance Coordinator who will log and investigate the issue. (Doc. 17 ¶ 26; Doc. 28 ¶ 26.) Within fifteen working days following receipt of the Formal Grievance, the Deputy Warden will issue a written response to the inmate that includes the Deputy Warden's decision and

supporting rationale. (Doc. 17 ¶ 27; Doc. 28 ¶ 27.)

The fourth and final step of the Inmate Grievance Procedure is for the inmate to appeal the decision of the Deputy Warden to the Director by submitting an Inmate Grievance Appeal form to the Grievance Coordinator who will log, process, and forward the Inmate Grievance Appeal documents to the Central Office Appeals Officer. (Doc. 17 ¶ 28; Doc. 28 ¶ 28.) Within thirty Calendar days of receipt of the Inmate Grievance Appeal, the Central Office Appeals Officer prepares a response and submits it to the Director (who may delegate signature authority for any Grievance Appeal responses) for approval and signature. (Doc. 17 ¶ 29; Doc. 28 ¶ 29.) The ADC considers the Director's decision to be final and to constitute exhaustion of all administrative remedies within the ADC. (Doc. 17 ¶ 30; Doc. 28 ¶ 30.)

Defendants assert that if Plaintiff had submitted a Formal Grievance or Grievance Appeal during the period from March 9, 2017 through February 13, 2020, it would have been recorded in the Rast, Bachman, Stiner, Buckley, or Morey Unit Grievance Logs. (Doc. 17 ¶ 32.) Plaintiff asserts that "ground level officers prohibit paperwork from being processed" and that he was either assaulted or stabbed each time he tried to get "papers" processed. (Doc. 28 ¶ 32.)

Defendants have no record at the Rast, Bachman, Stiner, Buckley, or Morey Unit of Plaintiff having filed a Formal Grievance or Grievance Appeal regarding an Eighth Amendment excessive force or failure-to-protect claim against Defendant Torres, Defendant Rode, or any other ADC employee. (Doc. 17 ¶ 33.) If an inmate exhausts his administrative remedies by appealing to the ADC Director, there will be a record of it in the Grievance Appeal Log and the Grievance Appeal File, both of which are maintained at ADC's Central Office. (*Id.* ¶ 34.) There is no record or evidence that Plaintiff submitted a Grievance Appeal to the ADC Director regarding an Eighth Amendment excessive force or failure-to-protect claim against Defendant Torres, Defendant Rode, or any other ADC employee. (*Id.* ¶ 35.)

Plaintiff asserts that on December 28, 2018, he submitted an Inmate Informal

Complaint Resolution to CO III Reddington. (Doc. 28-1 ¶ 18.)[1] Plaintiff asserts that after receiving no response, on January 17, 2019, he submitted a grievance to Warden Rode, which stated that officers and the warden "refuse to respond to my informals or sign any of my paperwork"; Plaintiff stated that his life was in danger and requested to be housed safely and the return of his property. (*Id.* ¶ 19; Doc. 28-2 at 4.) Plaintiff asserts that the next day, he was stabbed and hospitalized. (Doc. 28-1 ¶ 20.) On January 21, 2019, Plaintiff was released from the hospital and although he asked not to be housed in Buckley, he was housed there and assaulted on January 22, 2019. (*Id.* ¶¶ 21-22.) Plaintiff asserts that he was then left without property, privileges or supplies for three months from January 22, 2019 through April 16, 2019 and during that time, S.S.U. Taylor told him to "stop filing papers." (*Id.* ¶¶ 23, 25.)

Plaintiff asserts that on January 28, 2019, he submitted an informal resolution to Warden Rode complaining about the assaults, that officers were threatening him to stop putting in paperwork, and requesting protection, but received no response, although the grievance was returned to him on February 11, 2019. (*Id.* ¶¶ 24, 26; Doc. 28-2 at 5.) Plaintiff asserts that in March 2019, CO II Golder placed an inmate in Plaintiff's cell with a knife to stab Plaintiff and to tell him not to file lawsuits. (Doc. 28-1 ¶ 27.) Plaintiff asserts that because he had no access to paperwork and feared further assaults, he asked his counsel to send a letter to Director Ryan and Warden Thompson and his counsel sent a letter detailing the threats to safety. (*Id.* ¶ 28.)[2] Plaintiff asserts that between April 16,

---

[1] Plaintiff did not submit a copy of this grievance with his Response, but Defendants provided it with their Reply. In it, Plaintiff states that between December 14, 2018 and December 24, 2018, he was forced to move to Rast Max because he did not want to move to Building 2 and that since he was moved, he was sprayed, cuffed, and slammed on his head by CO II Torres, that other officers allowed Plaintiff's property to be stolen. (Doc. 31-1 at 2.) As relief, Plaintiff asked to be moved to a different building and to have his property returned to him. (*Id.*)

[2] This letter outlined threats to Plaintiff's safety and requested that Plaintiff be removed from Lewis Prison and sent to Safford or a mental health program and that Plaintiff's personal property be returned. (Doc. 28-2 at 6-8.)

2019 and June 4, 2019, he was assaulted five times and his "environment did not allow [him] to file paperwork." (Doc. 28-1 ¶ 37.) On September 11, 2020, Plaintiff was transferred to SMU 1 and although it is more professional there, it is still dangerous for him to "speak this open." (*Id.* ¶ 38.)

Plaintiff attaches an inmate informal complaint resolution dated March 19, 2019 wherein he includes many grievances including that he was assaulted by CO II Torres on December 14, 2018. (Doc. 28-4 at 1.) It appears that Plaintiff received a response on April 29, 2019 explaining that the grievance was unprocessed as out of time frames. (Doc. 28-7 at 1.)

### D. Discussion

Defendants have shown that there was an available grievance process, so the burden shifts to Plaintiff to show that the grievance process was "effectively unavailable to him." Plaintiff asserts that he was unable to file grievances because ground level officers prohibit paperwork from being processed, that he grieved facts behind the excessive force claim and failure to protect claim in December and January 2019, but did not receive responses, and Plaintiff was attacked, hospitalized, and threated to stop filing grievances thereafter.

Plaintiff asserts that administrative remedies were effectively unavailable to him because officers refused to process his grievances and he feared retaliation for continuing to file grievances.

"[F]ear of retaliation may be sufficient to render the inmate grievance procedure unavailable." *McBride v. Lopez*, 807 F.3d 982, 984 (9th Cir. 2015). "To show that a threat rendered the prison grievance system unavailable, a prisoner must provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance. If the prisoner makes this showing, he must then demonstrate that the belief was objectively reasonable,"—"that a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance." *Id.* at 987.

Defendants assert that even if Plaintiff's allegations of retaliation are taken as true, the administrative process was not rendered "effectively unavailable" to him because the exhibits he produces show that he continued to attempt to exhaust remedies, and even received responses from staff, but he did not comply with the Department Order and follow through with all necessary steps. Defendants assert that Plaintiff submitted December and January grievance paperwork and purports to have submitted an Informal Complaint regarding his property on March 1 and March 27, that he submitted two informal complaints on March 19 at Rast and Buckley Units, that he sent an informal complaint to Rode on March 20, and that he received one response from the grievance coordinator on April 29. Defendants assert that this shows that between December 21 and March 20, Plaintiff submitted five Informal Complaints and two Inmate Grievances showing that he had access to paperwork, which he was physically and mentally able to complete despite his alleged fear of retaliation. Defendants argue that because Plaintiff filed grievances during this time period, he cannot show a subjective belief that made the grievance process "unavailable."

Plaintiff's arguments, while serious, are difficult to follow and it is unclear how the arguments apply to his Eighth Amendment claims against Defendants Rode and Torres. Plaintiff argues that Defendants did not meet their burden of showing there was an available grievance process because Plaintiff asserts that there are problems with the grievance process, but Plaintiff misunderstands the burden shifting. Defendants must show that there is an available grievance process, which they have done. The burden then shifts to Plaintiff to show that the grievance process is effectively unavailable. Plaintiff makes various allegations as to why the grievance process was generally unavailable to him: that his grievances often went unprocessed, that he was sometimes without his property, and that he was threatened and assaulted and told not to file paperwork.

Plaintiff conflates several arguments about exhaustion being excused, including that nonexhaustion was justified due to a fear of retaliation with a separate argument that prison officials' mishandling of grievances excuses nonexhaustion. *See Nunez v. Duncan*, 591

F.3d 1217, 1224 (9th Cir. 2010) (finding plaintiff's failure to exhaust was excused because he "was precluded from exhausting, not through his own fault but by the [prison official's] mistake." )

Moreover, Plaintiff's arguments are scattershot and do not explain why he was unable to exhaust the relevant grievances against Torres and Rode specifically. For example, Plaintiff asserts that he submitted the December 28, 2018 grievance regarding Torres to Reddington, and that he did not receive a response, but does not explain why he did not continue the grievance process when he did not receive a response. *Albino* requires that a plaintiff come forward with "evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *See Albino*, 747 F.3d at 1172. As a result, even assuming the truth of Plaintiff's allegations, they are devoid of specificity or context that could give rise to an inference that the grievance procedure was unavailable specifically in this instance. It is not enough for Plaintiff to merely allege that officers often refuse to process grievances, that he was sometimes not able to file forms or that he had other unspecified issues filing unspecified grievances. Rather, Plaintiff must come forward with supporting detail from which the Court could infer that he was hindered from exhausting as to his claims in this case. *See Rodriguez v. County of Los Angeles*, 891 F.3d 776, 794 (9th Cir. 2018) (determining that inmates' fear of filing grievances was sufficient to excuse the exhaustion requirement because they provided detailed information about the abuse they suffered, by whom, and when, and connected that information with their fear about filing future grievances, but noting that "[i]f the appellees in this case had alleged only general and unsubstantiated fears about possible retaliation, as appellants claim, we would hold that they had not exhausted their administrative remedies.") (citing *McBride*, 807 F.3d at 987-88).

The Court is unconvinced that Plaintiff did not file an appeal due to alleged threats because Plaintiff continued to file grievances after receiving the alleged threats and Plaintiff provides no information as to how he was deterred from filing the grievances and

necessary appeals relating to his claims against Rode and Torres. Accordingly, Plaintiff has not met his burden of showing that administrate remedies were effectively unavailable to him, and the Motion for Summary Judgment will be granted.

Because the Court dismisses Plaintiff's federal claims, the Court no longer retains federal question jurisdiction because all remaining claims in this case are state law claims. Thus, the only basis for federal jurisdiction in this case is supplemental jurisdiction. The Ninth Circuit has " often repeated that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of the factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). The Court thus declines to exercise supplement jurisdiction over the remaining state law claims and will remand this action to the Maricopa County Superior Court.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 16).

(2) The Magistrate Judge's Report and Recommendation (Doc. 18) is **ACCEPTED AND ADOPTED**.

(a) The State of Arizona is **substituted** for Defendants Pomeroy-Huff, Rode, Ryan, Wait, Torres, and Valasquez as to Counts Three, Four, and Five of the First Amended Complaint.

(b) Defendants Pomeroy, Wait, Ryan, and Valasquez are **dismissed** from this action without prejudice.

(c) Defendants Rode and Torres are **dismissed without prejudice** from the state law claims in Counts Three and Five, respectively.

(3) Defendants' Motion for Summary Judgment (Doc. 16) is **granted**. Count One and Defendants Rode and Torres are **dismissed without prejudice** for failure to properly exhaust available administrative remedies.

(4) The remaining claims in this action are (a) state law negligence and/or gross negligence in Count Three against the State of Arizona based on Rode's alleged conduct, (b) state law negligence and/or gross negligence against the State of Arizona in Count Three based on Wait and Pomeroy's alleged conduct, (c) state law assault and battery claims against the State of Arizona in Count Five based on Valasquez's alleged conduct , (d) state law assault and battery claims in Count Five against the State of Arizona based on Torres's alleged conduct, and (e) state law negligent hiring, training, and supervision in Count Four against the State of Arizona.

(5) The Clerk of the Court must **remand this action** to Maricopa County Superior Court.

Dated this 19th day of February, 2021.

Honorable Diane J. Humetewa
United States District Judge